UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

April Breckenridge and Harvey Ayers,

    Plaintiffs,

Case No: 18-10787
Honorable Denise Page Hood

v.

Nissan Motor Acceptance Corporation,

    Defendant.
_____/

**ORDER GRANTING NISSAN'S MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(c) and 56 [Dkt. No. 51]**

**I.    INTRODUCTION**

Plaintiffs filed this action in Wayne County Circuit Court on February 12, 2018. Plaintiffs alleged that a number of former Defendants violated the Fair Debt Consumer Protection Act ("FDCPA") and the Michigan Occupational Code, and that Defendant Nissan Motor Acceptance Corporation ("Nissan") violated the Michigan Uniform Commercial Code ("Michigan UCC"), Article 9. On March 9, 2018, the case was removed to this Court, and on April 13, 2018, Nissan filed an Answer to the Second Amended Complaint and a Counterclaim for breach of contract. Dkt. Nos. 16, 17. Pursuant to the Court's Scheduling Order, Dkt. No. 30, the discovery period

1

closed on November 30, 2018. Nissan is the only remaining Defendant, as the Court has entered stipulated orders dismissing the other Defendants.

On February 18, 2019, Nissan timely filed a Motion to Dismiss and for Summary Judgment Pursuant to Federal Rules of Procedure 12(c) and 56. Dkt. No. 51. The Motion has been fully briefed, and a hearing on the Motion was held on April 10, 2019. For the reasons that follow, the Court grants Nissan's Motion.

## II. BACKGROUND

Prior to February 13, 2017, Nissan hired Primeritus Financial Services, Inc. to effectuate the repossession of a 2015 Nissan Altima ("Altima"). Plaintiffs purchased the Altima on December 11, 2014, pursuant to a Michigan Simple Interest Retail Installment Contract (the "Contract"). Under the Contract, Plaintiffs agreed to pay Nissan $38,408.40 for the Altima. Plaintiffs defaulted on the Contract when they made no payments after the May 2016 payment. Nissan repossessed the Altima after February 13, 2017, pursuant to the Contract and its security interest. Nissan ultimately sold the Altima in December 2017 for $9,500.00. After applying the $9,500.00 sale proceeds against the balance due and owing under Contract, Nissan calculated that Plaintiffs had a balance remaining due and owing in the amount of $20,078.96.

In its Motion, Nissan asks the Court to dismiss Plaintiffs' Second Amended

Complaint with prejudice, find in favor of Nissan on its Counterclaim, and enter judgment in favor of Nissan and against Plaintiffs in the amount of $20,078.96.

## III. APPLICABLE LAW & ANALYSIS

### A. Rule 12(c)

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. **Rule 56**

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

It is undisputed that, at this point in the litigation, there is no federal question jurisdiction over Plaintiffs' cause of action against Nissan. 28 U.S.C. § 1331. It is further undisputed that, although the parties are diverse, the amount in controversy is $20,078.96, an amount far below the "greater than $75,000" threshold amount required for diversity jurisdiction. 28 U.S.C. § 1332. In their response, Plaintiffs contend that the Court should dismiss their remaining claim and Nissan's Counterclaim for lack of subject matter jurisdiction.

As Nissan states, the Court had subject matter jurisdiction over Plaintiffs' cause of action when it was removed, based on the federal question presented by Plaintiffs' FDCPA claim. The Court then exercised its discretion to assume supplemental jurisdiction over Plaintiffs' state law claims, including their Michigan UCC claim against Nissan, because the Michigan UCC claim is "so related to claims in the action within such jurisdiction that they form part of the same case or controversy." 28

5

U.S.C. § 1367(a); *Harper AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004). A court is not divested of subject matter jurisdiction simply because the federal claims are dismissed, leaving only state law claims over which the Court had exercised supplemental jurisdiction. *See Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000). It is within the discretion of the district judge whether to retain the state law claims or remand them to state court. *Harper*, 392 F.3d at 210-11.

The Court will retain supplemental jurisdiction over Plaintiffs' Michigan UCC claim (and cause of action) for the following reasons: (a) the case was filed and has been in this Court for more than 12 months; (b) discovery is complete; (c) Nissan filed its dispositive motion before the issue of jurisdiction was raised; (d) the Court previously considered and ruled upon substantive motions, so it is familiar with and has invested itself in Plaintiffs' cause of action; and (e) Plaintiffs knew no later than January 14, 2019 that Nissan intended to file a dispositive motion, yet Plaintiffs did not posit to the Court the issue of jurisdiction until two months later (and three weeks after Nissan filed its dispositive motion and brief). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 357 (1988); *Harper*, 392 F.3d at 211-12.

**B.    Michigan UCC Claim**

*1.    Rule 12(c)*

In Count V of the Second Amended Complaint, Plaintiffs claim that Nissan

6

violated Michigan, UCC Article 9. After Plaintiffs stated that they were "incorporat[ing] the preceding allegations [Paragraphs 1-59] by reference," Plaintiffs alleged only that "NISSAN MOTOR ACCEPTANCE CORPORATION violated Article 9 of the Michigan Uniform Commercial Code . . . [and] Plaintiffs have suffered damages as a result of these violations." Dkt. No. 31, ¶¶ 60-62. Nissan contends that Plaintiffs do not cite any provision of the Michigan UCC that was violated, nor do they specify how the Michigan UCC was violated. Nissan argues that Count V of Plaintiffs' claim must be dismissed with prejudice because it makes only "[t]hreadbare recitals of all the elements of a cause of action, supported by mere conclusory statements," which cannot survive a Rule 12(c) motion. Citing *Iqbal*, 556 U.S. at 679.

Plaintiffs respond that, viewing the Second Amended Complaint in the light most favorable to Plaintiffs, including drawing inferences favorable to Plaintiffs, Nissan had notice that Nissan violated Michigan UCC, Article 9. Plaintiffs state that Nissan violated Michigan UCC, Article 9 by: (1) "failing to comply with the notice requirements under law," and (2) "failing to sell a vehicle within a commercially reasonable amount of time." Dkt. No. 53, PgID 519.

Plaintiffs do not specify any allegations in the Second Amended Complaint that support their response, but the Court finds numerous allegations in the Second

7

Amended Complaint that do so. Plaintiffs allege that Nissan took possession of the Altima on February 13, 2017 pursuant to a security interest and did not sell the Altima until December 2017. Dkt. No. 31, ¶¶ 23, 28. Plaintiffs allege that Nissan "failed to comply with MCL § 440.9611" when Nissan "failed to notify Plaintiff[s] . . . within a commercially reasonable time" and "failed to properly notify [Plaintiffs] of [their] right to cure prior to the disposition of the collateral" in which Nissan held a security interest. Dkt. No. 31, ¶¶ 24-27. The Court notes that M.C.L. § 440.9611 is part of Michigan UCC Article 9. Based on Plaintiffs' allegations at Paragraphs 23-28 and 60-62 of the Second Amended Complaint, the Court finds that Plaintiffs have pleaded a claim for violation of Michigan UCC, Article 9 with facial plausibility. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. Accordingly, the Court denies Nissan's motion to dismiss Plaintiffs' Second Amended Complaint, specifically Plaintiffs' claim that Nissan violated Michigan UCC, Article 9.

    2.    *Rule 56*

Nissan argues that it is entitled to summary judgment because there are no facts supporting Plaintiffs' Michigan UCC claim. Nissan argues that M.C.L. § 440.9611 requires only that the secured party must notify the debtor: (1) of the secured party's intention to dispose of the collateral; and (2) that the disposal of the collateral occurred. Nissan states that it properly notified Plaintiffs of its intent to sell the

Altima and, eventually, that it had sold the Altima. Nissan has attached to its motion the affidavit of Patricia Terpilowski, a keeper of Nissan's account records, who avers that Nissan sent: (a) on February 15, 2017, by first-class mail, a "Notice of Our Plan to Sell Repossessed or Surrendered Motor Vehicle;" and (b) on December 26, 2017, by first-class mail, a "Calculation of Surplus or Deficiency." Dkt. No. 51, Exs. B, C, and D.

The entirety of Plaintiffs' response to Nissan's motion for summary judgment is:

> At the heart of the dispute between Plaintiffs and NMAC is the amount of time between the repossession of the [Altima] – February 13, 2018 – and the sale of the [Altima] – December 21, 2018. It took over 10 months for NMAC to sell the [Altima]. Plaintiffs contend that this is commercially unreasonable and that a trier of fact could find that this was commercially unreasonable. As such, NMAC is precluded from obtaining relief under Rule 56[c] as to Plaintiff[s'] Article 9 claim against it.

Dkt. No. 53, PgID 520. Plaintiffs argue that the delay in sale of the collateral caused the "unpaid aggregate balance on the [Altima], interest, storage fees, and late charges to accrue and caus[e] the [Altima] to depreciate in value, . . . [resulting in Nissan selling] the [Altima] for an amount far below market value for a similar vehicle." Dkt. No. 53, PgID 513.

Nissan argues that Plaintiffs' response is inadequate to survive a summary judgment motion, as Plaintiffs "do not provide this Court with any law to define what

9

is commercially reasonable or any facts and evidence as to how this [the ten months it took Nissan to sell the Altima] was commercially unreasonable." Dkt. No. 55, PgID 532.

Nissan refutes Plaintiffs' allegation that the Michigan UCC affords Plaintiffs cure rights, as they only had the option to redeem the Altima by paying the balance of the Contract, as well as delinquency, collection, and other expenses totaling $28,761.46. Plaintiffs did not address this argument.

Nissan states that Plaintiffs have not produced any evidence that the Altima was not sold in a commercially reasonable time period or that the Altima was damaged at the auction. Nissan asserts that, because there was an issue regarding the Altima's mileage, Nissan could not obtain an accurate title from the Michigan Secretary of State (which was necessary to sell the Altima) until November 22, 2017. Nissan further asserts that Plaintiffs have not offered any evidence that: (1) the Altima was damaged in any way; (2) Plaintiff was harmed in any manner as a result of the delay in selling the Altima; or (3) the delay in selling the Altima (or any alleged damage to the Altima) negatively impacted the price for which the Altima was sold.

The Court agrees. Plaintiffs have not offered any evidence that the 10 months that transpired between repossession of the Altima and Nissan's sale of the Altima resulted in the sales price of the Altima being lower than it would have been if sold

earlier. Accordingly, the Court grants Nissan's motion for summary judgment with respect to Plaintiffs' Michigan UCC claim and dismisses Plaintiffs' cause of action.

Nissan also contends it is entitled to summary judgment on its breach of contract Counterclaim. Nissan states it is undisputed that Plaintiffs defaulted under the Contract, which gave Nissan the right to repossess the Altima and sell it in a commercially reasonable manner. Nissan asserts that it is entitled to $20,078.96, which is the unpaid balance due and owing under the Contract ($27,327.35), plus other expenses including delinquency, repossession and auction fees ($2,177.50), less the $9,500.00 received as proceeds from the sale of the Altima. Plaintiffs did not respond to Nissan's argument that Nissan is entitled to summary judgment on the breach of contract Counterclaim.

For the reasons set forth above, the Court grants Nissan's motion for summary judgment on its Counterclaim.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Nissan's Motion to Dismiss and for Summary Judgment Pursuant to Federal Rules of Procedure 12(c) and 56 [Dkt. No. 51] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' cause of action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Nissan is awarded $20,078.96 on its Counterclaim.

IT IS ORDERED.

                                                                          s/Denise Page Hood  
                                                                          Chief Judge, U. S. District Court

Dated: April 25, 2019